Deaderick, J.,
delivered the opinion of the court.
This action is brought in the name of the administrator of John Smith, deceased, for use of the widow and children, heirs and distributees of said John Smith, to recover damages against the Nashville and Chattanooga Railroad Company for killing the said John Smith, by running a train of cars over him about the last of September, 1865.
The declaration alleges that the engine, with a train of cars attached, at an unusual time and hour of the night, when engines and cars were not accustomed to run upon said road, it being very dark, with no head light on said engine, or other light, without blowing the whistle or ringing the bell, as required by law, did run over and kill the said Smith, he being walking on said track at the time; and that said railroad company did recklessly, wrongfully, unlawfully and negligently run said engine at the time, whereby said Smith was killed, to the damage of plaintiff $25,000.
Defendant pleaded not guilty, upon which issue there was a trial by jury, and verdict for $10,000 — $4,000 of which was remitted at the suggestion of the court, a new trial was refused, and appeal in the nature of a writ of error was taken to this court.
The facts necessary to be stated are, that the deceased was seen on the railroad track between sun *176 down and dark the evening he was killed; that about 10 o’clock at night a construction train passed along the road and ran over him, crushing his head and severing the body, killing him instantly. The party was said to be "drinking,” but not drunk, by the witness who passed him late in the evening. ■ There was no head-light on the engine as it passed, nor was the whistle sounded, nor brakes put down to avoid the accident; in fact, Smith was not seen as far as the proof shows, nor was it known by the parties in charge of the train that he was killed, or had been on the track, till perhaps next day.
It is probable from the proof that he was lying across the track, and asleep, and thus run over and crushed without attracting the attention of employees of the road running the train.
Several questions are presented and relied on here for reversal, arising on the charge of the court.
The court correctly held, that if it was shown that the party was killed by the defendants’ cars running over him, liability would be incurred, and the jury must find for plaintiff, unless the defendants show by proof that the precautions laid down in the Code, s. 1106, sub-s. 5, were observed. In other words, when the killing by the cars of the company is shown, then the burden of proof is thrown on the defendant that all the care imposed by law had been exercised: 1 Col., 74, 75. By said section it is provided that “every railroad company shall keep the engineer, fireman, or some other person upon the locomotive always upon the lookout ahead; and when any ani *177 mal or other obstruction appears upon the road, the alarm whistle shall be sounded, the brakes put down, and every possible means employed to stop the train and prevent an accident.”
The court instructed the jury (after giving them the substance of the above section) that “if the injury occurred in the night time, it was the duty of defendants to avail themselves of, and have in use in the night time such means and appliances as might reasonably be obtained to enable their employees to see ahead on the track, and if they used the precautions above laid down, and an accident occurred they would not be liable.” The proof showed that no head-light was on the train on the night of the accident.
It is insisted his Honor erred in his instructions on this point when he goes on to tell the jury that the negligence of deceased in contributing to the accident would be no bar. to the action, unless it was shown the precautions above indicated were observed. It is argued very ingeniously that the statute does not require that a head-light or other light shall be used by railroads as one of the means of preventing accidents, and that therefore when the want of this precaution is relied on for recovery, the road may make the common law defense of contributory negligence. In this view we can not concur. The statute in prescribing that the road should always keep the engineer, fireman, or some other person, upon the look-out ahead, certainly did not mean that a literal compliance with these words should be sufficient, but clearly meant that the ordinary means employed by *178 railroads to make the look-outs effective should be used by the company. This is strengthened by the other clause of the statute, which is, that “when any person, animal or other obstruction appears upon the road the alarm whistle shall be sounded.” How could the object be seen or the obstruction appear upon a dark night, so that the precautions prescribed could be observed, if there was no light of any kind on the engine to enable the look-out to see ahead? “It would be equivalent to allowing the party on the look-out,” as was well remarked by one of the counsel, “to be a blind man, or be as well to allow him to keep watch with his eyes shut,” as to have him at his place, but under such circumstances as totally precluded him from performing the duty for which he is required to be there. In fact, the statute by fair implication assumes that such means as will enable the party to see ahead shall be used, by imposing the duty on the company to have the look-out on the engine, and was passed with reference to the known and universal practice of all roads to use a head-light at night on their engine.
We do not think his Honor erred in his instructions to the jury on this point, though he might have been more accurate and specific, perhaps, in his statement of the rule.
We need not, in this view, examine the question of contributory negligence with the conflicting and embarrassing decisions that are to be found in our books on that subject.
His Honor correctly stated to the jury that the *179 'negligence of the party killed might be looked to in mitigation of damages.
It is insisted next, that, as the • case was one of instantaneous death of the deceased, the charge of his Honor was grossly erroneous or defective in failing to define to the jury the elements of damage and the limits upon their discretion.
We think this objection well taken. The court said to the jury, you will look to the proof, and from all the facts and circumstances under the law as charged, determine what is right between the parties; and if you find for the plaintiff, you will assess the damages to whatever sum you think proper, as compensation for the suffering,' physical and mental, of the deceased, leaving out of view the loss sustained by the widow and children.
This court held in the case of the Nashville and Chattanooga R. R. Co v. Prince, 2 Heis., 585, that, “looking to the obvious purpose of the Legislature in this alteration of the common law, we are satisfied it was intended that the representative of a person who had died from personal injuries, should have the right to recover damages, not only for the mental and bodily suffering, loss of time and necessary expense resulting immediately to the deceased from the injuries, but also for the damages resulting to the party for whose benefit the right of action survives from the death consequent upon the injuries received.” Under this rule it is clear his Honor has excluded one of the most essential elements of damages in this case from the consideration of the jury: that is, the “dam *180 ages resulting to the parties for whose benefit the suit is brought, by the loss of the husband and father.” But can the plaintiff in error object to this? It is obvious the error is against the defendants in error, and not in their favor, for it excluded from the jury and forbade them estimating this source of damage to which they were entitled. The case can not be reversed at the instance of plaintiff for this reason.
It is insisted the verdict is not supported by the proof in the case; and as to the sum given for damages, we think the objection is well taken, and that a new trial should be granted. Actual compensation is the measure of damages in all cases where the nature of the case admits of the application of the rules; and in cases involving mental and physical suffering that do not admit of being brought to an actual standard of value, still some reasonable proportion between the circumstances attending the injury and the damages allowed should be observed by the jury.
We think the jury, in view of the facts of the case, under the charge of his Honor, “that if the death was instantaneous they should find for the defendant,” by rendering a verdict for $10,000, have indicated the presence of such passion and prejudice as requires that a new trial should be had. We may add that this verdict indicates, too, that the jury utterly disregarded his Honor’s direction that they might consider the negligence of the deceased in mitigation of damages. Where the law allows proof of circumstances or facts to be ¡presented in mitigation of damages, it can only mean that when such facts and *181 circumstances are made out, they shall be fairly and fully weighed by the jury, and shall have their proper weight in reducing or mitigating the damages to which the party would otherwise be entitled if those circumstances were not present in the case.
"We do not think the jury have given proper weight to the fact, as appears from the proof, that the deceased was at night, probably from effects .of drinking, lying asleep across defendants’ track, thus recklessly and thoughtlessly exposing himself to the danger from which his death has resulted.
For these reasons the case must be reversed and remanded for a new trial. •